In the
# United States Bankruptcy Court
### For the Northern District of Illinois

| | |
|---|---|
| IN RE:<br><br>**ANTHONY PAYNE**,<br><br>DEBTOR. | CASE NO. 19-10450<br>EASTERN DIVISION<br>CHAPTER 13<br><br>HON. DONALD R. CASSLING<br><br>HEARING DATE:  JULY 18, 2019<br>HEARING TIME:  9:30 A.M. |

# RESPONSE TO DEBTOR'S
# MOTION FOR DAMAGES

———————————

**Mark Flessner**
Corporation Counsel

David Paul Holtkamp (IL 6298815)
Assistant Corporation Counsel Supervisor
CITY OF CHICAGO
    DEPARTMENT OF LAW
121 N LaSalle St., Ste. 400
Chicago, IL 60602
Tel: (312) 744-6967
Email:  David.Holtkamp2@cityofchicago.org

# FACTS

The facts of this contested matter cannot be disputed. The Debtor commenced this chapter 13 case on April 10, 2019. *See* Petition [Dkt. No. 1]. On that date, the City of Chicago had lawful possession of the Debtor's vehicle after impounding it for outstanding municipal code violations. The Debtor scheduled the City as a secured creditor due to its possessory lien on the vehicle on the petition date. *See* Schedule D [Dkt. No. 13].

Relying on this Court's decision in *In re Avila*, 566 B.R. 558, 563 (Bankr. N.D. Ill. 2017), holding "that the City has not violated the automatic stay because its post-petition retention of the Vehicle was an act to maintain perfection of its possessory statutory lien within the meaning of § 362(b)(3)," the City maintained possession of the Debtor's vehicle after the case was filed. The Debtor her asserts that hold the vehicle post-petition violated § 362(a)(6), but that is a distinction without a difference because § 362(b)(3) is an exception to all of § 362(a).

The Seventh Circuit subsequently held that the City could not rely on § 362(b)(3) to maintain possession of a debtor's vehicle. *See In re Fulton,* 926 F.3d 916 (7th Cir. 2019). Shortly thereafter the City processed the release of the Debtor's car. The Debtor now seeks damages, including punitive damages, for the 2 months prior to the *Fulton* opinion when the City was complying with this very Court's precedent and instruction. The request should be denied.

# DISCUSSION

The Debtor's motion should be denied. First, the City did not willfully violate the stay. While specific intent to violate the automatic stay is not required for the violation to be willful, *see In re Price,* 42 F.3d 1068, 1071 (7th Cir. 1994), and subjective

"good faith" by the creditor is not a defense, *see In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989), the "regime under § 362 tracks that for other proceedings in the nature of contempt of court" like § 524, *Randolph v. IMBS, Inc.*, 368 F.3d 726, 731 (7th Cir. 2004), and therefore a creditor acting with an objectively reasonable basis to believe that the stay does not apply does not act willfully. *See Taggart v. Lorenzen,* 139 S. Ct. 1795, 1799 (2019) (deciding the standard under § 524 but questioning strict liability in the automatic stay context). There is no binding precedent to the contrary in this circuit, and the rule only makes sense under the fact of this case.

Second, applying § 362(a) under *Fulton* to require the City to release its possessory interest in the vehicle immediately when the case is filed, without a predeprivation hearing, or any critical need for such deprivation to occur prior to a hearing, violates the City procedural due process rights under the 5th Amendment. Simply put, if the promise of due process means anything, some sort of process and hearing must be provided before a property interest may be deprived.

Third, § 106(a)(3) codifies the common law that an award of punitive damages may not be granted against a governmental unit, which the City unquestionably is. Therefore, no punitive damages are available to the Debtor here.

Fourth, the Debtor has not even alleged any actual damages, saying only that he was "significantly inconvenienced as a result[.]" Moreover, the Debtor's attorney's fees must be limited to $125 per hour under § 106(a)(3) and only after he is able to prove actual damages.

Finally, even if this Court holds the City acted willfully, and that the automatic stay may constitutional take a property interest from one party and hand it to another without any right to process at all, any damages against the City must be offset against the City's claim before the City has to open its wallet. *See* 11 U.S.C. § 106(c).

## 1. **The City did not willfully violate the stay.**

The plain text of the statute provides that the court shall award damages to an individual "injured by any *willful* violation of the stay[.]" 11 U.S.C. § 362(k) (emphasis added). The word "willful" modifies violation, and therefore it cannot mean merely a deliberate or intentional act that leads to a violation. *See Internal Revenue Serv. v. Murphy*, 892 F.3d 29, 46 (1st Cir. 2018) (Lynch, J. dissenting) (*citing Kawaauhau v. Geiger*, 523 U.S. 57, 57-58 (1998).[1] A willful violation simply cannot mean strict liability for violating the stay.

The word "willful" is a "word the law typically does not associate with strict liability," and is usually "dependent on the context in which it appears." *Taggart*, 139 S. Ct. at 1804. In the civil liability context, the Supreme Court has consistently held that "willful" means both the knowing (or intentional) violation of the law, or a careless (or reckless) disregard for whether the act violates the law. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). Willful acts, however, do not include those taken with an objectively reasonable basis for believing the act does not violate the law. Certainly, individuals with an objectively reasonable basis to believe they are not violating the law are not knowingly violating that law, nor are they acting with careless or reckless disregard.

But § 362(k) fits within an even more specific context in the broad category of civil liability. The automatic stay under § 362 is a statutorily imposed injunction prohibiting a number of acts. *See Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 878 (7th Cir. 2001); *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 912 (7th Cir. 2001). The

---

[1] The Supreme Court's analysis of § 523(a)(6) maps perfectly onto § 362(k). The Court has held: "The section's word 'willful' modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely, … a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead 'willful acts that cause injury' or selected an additional word or words, i.e., 'reckless' or 'negligent,' to modify 'injury.'" *Kawaauhau*, 523 U.S. at 57–58.

3

"regime under § 362 tracks that for other proceedings in the nature of contempt of court" for violating an injunction. *Randolph*, 368 F.3d at 731. Therefore, the meaning of willful must be read in the more specific context of civil liability for contempt. The Supreme Court recently held that "civil contempt should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct. This standard reflects the fact that civil contempt is a severe remedy, and that principles of basic fairness require that *those enjoined receive explicit notice of what conduct is outlawed* before being held in civil contempt[.]" *Taggart*, 139 S. Ct. at 1801-02 (internal citations and quotations omitted) (emphasis added). Therefore, the word willful in the context in which Congress used it in § 362(k) cannot be akin to the strict liability that the Debtor would like to impose.

Additionally, the Seventh Circuit has never held that strict liability applies to in the § 362(k) context. The court of appeals has held that "[a] 'willful violation' does not require a specific intent to violate the automatic stay." *In re Price*, 42 F.3d at 1071. But as stated above, the word "willful" in the civil liability context, does not require intent to violate the law, but only requires a careless or reckless disregard. *See Safeco Ins. Co. of Am.*, 551 U.S. at 57. *Price*, therefore, just applies the standard definition of the term. The court of appeals made that clear when it held that the government willfully violated stay when it "declined to intervene," "despite the several pleas to halt further collection actions[.]" *In re Price*, 42 F.3d at 1071. The government clearly showed a reckless disregard for the stay. It acted willfully.

Citing *Price*, the circuit court has also put it a bit differently stating that a willful violation occurs when "the creditor takes questionable action despite the awareness of a pending bankruptcy proceeding." *In re Radcliffe*, 563 F.3d 627, 631 (7th Cir. 2009). This, again, merely restates the normal meaning of "willful" in the civil liability context: acting with careless or reckless disregard for the law, *i.e.*, questionably. In fact, the word "questionable" means "[n]ot *likely* to be true or correct" or

4

"[n]ot *likely* to be good, honest, or useful[.]" Questionable, Black's Law Dictionary (11th ed. 2019) (emphasis added). The circuit court could not have meant "questionably action" to mean any action that may or may not violate the stay, no matter how well based in the law. Under such a standard even actions that are ultimately held not to violate the stay would still be sanctionable, as long as the outcome was a close call. But questionable is akin to carelessness, which is the correct standard to apply in this context.

There certainly are lower courts that have held that any intentional act done with the mere knowledge of the bankruptcy is willful, no matter how objectively reasonable the belief was that the stay did not apply. But that same standard was recently rejected by the Supreme Court in *Taggart* in the context of a discharge injunction violation under § 542. 139 S. Ct. 1795. Prior to that decision, the vast majority of, if not all, courts applied the same standard to discharge injunction violations as they did to stay violations. This case law holding that to be true is legion, including in this court. *See In re Leber,* 134 B.R. 911, 917 (Bankr. N.D. Ill. 1991) (The standard for a stay violation and discharge violation are the same); *Behrens v. Woodhaven Ass'n*, 87 B.R. 971, 976 (Bankr. N.D. Ill. 1988) (same). Additionally, Congress has linked the two to the same "willful violation" standard with respect to the IRS under 26 U.S.C. § 7433(e)(1) ("If…the [IRS] *willfully violates* any provision of section 362…or 524…such taxpayer may petition the bankruptcy court to recover damages against the United States."). This shows they understand them to be applied the same way.

The strict liability standard, not yet expressly adopted by this Circuit, has not been accepted by panels in the First, Third, Fifth, and Sixth Circuits either. These courts have "held that mere knowledge of a stay was insufficient to show a 'willful violation.'" *Murphy*, 892 F.3d at 48 n. 13 (Lynch, J. dissenting); *see also, Vahlsing v. Commercial Union Ins. Co.*, 928 F.2d 486, 490 (1st Cir. 1991) ("Violation of the stay,

5

in other words, is not a strict liability tort."). The First Circuit held in *In re Nelson*, 994 F.2d 42, 45 (1st Cir. 1993), that it was "reasonable for [the creditor] to believe that the property was not part of the bankruptcy estate" and that this was "so obvious that [the creditor's] actions could not have been willful that [the court found the] appeal frivolous." *Id.* In *Matter of Sherk,* 918 F.2d 1170, 1178 (5th Cir. 1990), *abrogated on other grounds by Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), the Fifth Circuit held that a creditor did not act willfully under § 362(k) when she pursued a solid legal argument that certain property was not property of the estate, but ultimately lost. *Id.* It reversed the award of sanctions. *Id.* The Sixth Circuit in *In re Merchant*, 958 F.2d 738, 742 (6th Cir. 1992) held that a university violated the stay by not releasing transcripts, but also held that the violation was not willful because university confused exceptions to the discharge under § 523 with exceptions to the stay. *Id.* Additionally, the Third Circuit has held that subjective "good faith" that a stay does not apply will not save a creditor, but that following "persuasive legal authority" will. *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1088 (3d Cir. 1992). In the end, while none of these circuit courts have used the Supreme Court's words from *Taggart* of "objectively reasonable basis," in effect, that is the test that they have applied to circumstances like the one here.

Given all of this, and the Supreme Court's recent admonishment that "the word 'willful,' [is] a word the law typically does not associate with strict liability," the standard to be applied is one of an "objectively reasonable basis" for believing the stay did not apply, which the City certainly had here. The City here obtained a ruling from this very Court prior to this case holding that it was not violating the stay by maintaining possession of a vehicle after the case was filed. *See In re Avila*, 566 B.R. 558. It had, therefore, persuasive legal authority that it was acting within the confines of the law, it had a legally meritorious argument that it was not violating the stay, and it certainly was not acting in reckless or careless disregard for the

stay. The motion should be denied.

## 2. The automatic stay as applied to the City violates its Procedural Due Process rights under the Fifth Amendment.

The City also cannot be sanctioned for not immediately releasing the Debtor's vehicle when the case was filed because § 362(a) as applied in that way violates the City's procedural due process rights. As a general rule, the party deprived of a protected property interest is entitled to prior notice and a hearing before a deprivation occurs. *See Zinermon v. Burch*, 494 U.S. 113, 132 (1990). "The right to prior notice and a hearing is central to the Constitution's command of due process." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). The Supreme Court said long ago

> The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property[.]

*Fuentes v. Shevin*, 407 U.S. 67, 80-81 (1972).

The law in this circuit under *Thompson v. General Motors Acceptance Corp. LLC*, 566 F.3d 699 (7th Cir. 2009), as reaffirmed and elaborated upon by *Fulton*, is that § 362(a) automatically transfers the possessory interest from a creditor with lawful possession on the petition date to the debtor immediately when the petition is filed. Therefore, § 362(a) applies to deprive the creditor of a property interest without any determination beforehand that the deprivation is appropriate or fair.

Due process, however, will "tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in '***extraordinary situations*** where some valid governmental interest is at stake that justifies postponing the hearing until after the event.'" *James Daniel Good Real Prop.*, 510 U.S. at 53 (em-

phasis added). Such extraordinary cases are the exception, not the rule. For example, a prompt post-deprivation hearing may satisfy due process when there is an emergency or when a predeprivation hearing is completely infeasible. *See Penn Cent. Corp. v. U.S. R.R. Vest Corp.*, 955 F.2d 1158, 1161 (7th Cir. 1992); *Zinermon*, 494 U.S. at 132; *see also Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 679 (1974) (predeprivation hearing infeasible where property is of a "sort that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given[.]"). But even when there is a prompt postpedrevation hearing, it must be accompanied by sufficient predeprivation procedural safeguards, such as the requirement of a detailed affidavit that the party seeking the deprivation is entitled to the property under the law and that a judge review the request (rather than a clerk, or no one at all because it is automatic) and issue the deprivation order. *See Connecticut v. Doehr,* 501 U.S. 1, 10 (1991).

Because it is difficult to list the circumstances when a postdeprivation hearing would satisfy due process, the Supreme Court provided a three factor analysis in *Mathews v. Eldridge*, 424 U.S. 319 (1976) for "formulating—more accurately perhaps, generating—exceptions to the requirement of predeprivation process." *Penn Cent. Corp.*, 955 F.2d at 1163. The *Mathews* analysis is slightly different, however, when the statute at issue enables one private party to take a property interest from another private party by enlisting the power and force of the government, such as a through prejudgment attachment. *See Doehr,* 501 U.S. at 10. Under *Fulton*, § 362(a) is analogous to a prejudgment attachment statute.

For cases where government action is used to transfer property rights from one private party to another, the relevant inquiry is: (1) consideration of the property interest that will be affected by the official action, that is, the deprivation; (2) the risk of an erroneous deprivation through procedures used, and the probable value of additional procedural safeguards; and (3) the interest of the private party seeking

the deprivation and transfer of rights to himself, with due regard for any ancillary government interest in the procedures used and burden of additional safeguards. *Doehr*, 501 U.S. at 11. In such cases, the process must also be closely scrutinized because the purpose of the constitutional protection is "to minimize substantively unfair or mistaken deprivations of property, a danger that is especially great when the [government] seizes [property] simply upon the application of and for the benefit of a private party," *Fuentes*, 407 U.S. at 80-81, such as the Debtor here.

## 2.1.   The creditor or lienholder's interest affected by the deprivation.

The first inquiry is to consider the interest of the party that has its property interest deprived. There can be little doubt that a creditor's possessory interest in property is an interest protected by constitutional due process. The Supreme Court has held on many occasions that a possessory interest in personal property is protected by both the Fifth and Fourteenth Amendments, even if the deprivation of possession is temporary or nonfinal. *See Doehr,* 501 U.S. at 12 ("temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection."); *Fuentes*, 407 U.S. at 84; *see also, Penn Cent. Corp.*, 955 F.2d at 1162; *Saukstelis v. City of Chicago*, 932 F.2d 1171, 1172 (7th Cir. 1991). Therefore, due process is required when the federal judiciary is enlisted to strip away the valid possessory interest of one party in order to hand it over to another. It is circuit law under *Thompson* and *Fulton* that this is exactly what the Bankruptcy Code does immediately, and with no judicial involvement, when a chapter 13 petition is filed.

Additionally, the City's property interest is even more substantial. The City's interest in the vehicle at issue is a possessory lien, of which possession is the essence. *See The Kalorama,* 77 U.S. 204, 210 (1869); *Nat'l Bank of Joliet v. Bergeron Cadillac, Inc.*, 347 N.E.2d 874, 875 (Ill. App. 4th Dist. 1976), *aff'd,* 361 N.E.2d 1116 (Ill.

1977); *Upgrade Corp. v. Michigan Carton Co.*, 410 N.E.2d 159, 161 (Ill. App. 1st Dist. 1980); *Twin Sewer & Water, Inc. v. Midwest Bank & Trust Co.*, 720 N.E.2d 636, 639-40 (Ill. App. 1st Dist. 1999); *In re Boggan*, 251 B.R. 95, 100 (B.A.P. 9th Cir. 2000). And even if as a matter of law some of the City's lien rights in the property are maintained after possession is lost, nothing stops a debtor from transferring, destroying, or further encumbering the vehicle once the vehicle is out of the City's possession. There is also little to nothing that could stop the debtor from simply abandoning the bankruptcy case once he has possession, causing the City to have its possessory interest immediately and finally terminated. In fact, that is exactly what has happened in countless cases, including cases involving schemes to file fraudulent petitions to obtain impounded vehicles. *E.g.*, Plea Agreements, *United States v. Rankins, et al*, 17-cr-00778 (N.D. Ill. 2018) (Nos. 51, 53) (defendants filed at least 39 fraudulent petitions presented to the City to secure release of impounded vehicles).

This lack of process also does not just affect the City. It strips possession from any creditor that has a lawful possessory interest in property under state law on the petition date, whether possession is coupled with a possessory lien or not. And it strips that interest with absolutely none of the safeguards that have been held to save other statutes that fail to provide a predeprivation hearing. *See Doehr*, 501 U.S. at 10 (some of those safeguards are "the requirement that a judge rather than a clerk determine that there is a clear showing of entitlement [before deprivation occurs, and] the necessity for a detailed affidavit.").

To enlist the aid of the federal judiciary in depriving a creditor of its possessory interest (and to obtain what is in essence an order of mandatory injunction requiring the creditor to relinquish its possessory interest immediately) the debtor merely needs to file a naked bankruptcy petition with the clerk. No judicial discretion or action is involved to determine whether the requirements for turnover under

10

§ 542(a) have been met (*i.e.*, that the property may be used under § 363, adequate protection is provided, and it is not of inconsequential value of benefit to the estate), nor is a bond or any other type of protection provided for instances of mistaken deprivation, destruction, or wholesale dissipation of the property after the debtor has possession. Not even so much as an affidavit or declaration that the debtor has an interest at all in the vehicle is required because the debtor has at least 14 days after the petition date to file any schedules. *See* Fed. R. Bankr. P 1007(c). No prejudgment attachment statute in the country disregards due process to such an extent as to transfer possession of property merely by filing a case with the clerk (with no judicial involvement or any other safeguards against substantial abuse of the system whatsoever).

The City's property interest in the vehicle is also substantially rooted in law enforcement. The City "has a strong interest in enforcing traffic ordinances for the safety and convenience of the public. The enforcement is impossible if vehicle owners can repeatedly ignore with impunity the sanctions imposed for violation of the ordinances." *Grant*, 594 F. Supp. at 1447; *see also, In re Hicks*, 582 B.R. at 6. The City's boot and impound program "provides an effective, and possibly the only feasible, means of forcing repeat violators to pay for or contest the tickets they have received." *Grant*, 594 F. Supp. at 1447. Providing individuals with a means of terminating the City's possessory interests and retrieving their vehicles without any process to the City substantially impairs the City's ability to enforce its traffic laws. Further, a vehicle is property "of a sort that could be removed to another jurisdiction, destroyed, or concealed" if possession is mistakenly given to the debtor when the requirement of § 542(a) cannot be met and adequate protection not provided. *See Calero-Toledo*, 416 U.S. at 679 (1974). Therefore, the harm to the City would likely be irreparable once deprived of its possession.

Ultimately, the City has a significant property interest in the vehicle, both be-

11

cause it has a possessory lien and because the City's property interest is not merely financial, but is a governmental interest substantially used to enforce the law.

## 2.2.  The risk of erroneous deprivation is enormous and value of a predeprivation hearing is overwhelming.

The second factor is the risk that there will be an erroneous deprivation of property rights, and whether there is value in additional procedural safeguards. Under the § 542(a) of the Bankruptcy Code, the debtor is only entitled to turnover of property that he may use under § 363 and that which is not of inconsequential value and benefit to the estate. *See* 11 U.S.C. § 542(a). Under § 363(e) a creditor is entitled to adequate protection of their property interests that the debtor proposes to use, or the debtor should not be allowed to use it at all. *See* 11 U.S.C. § 363(e); *see also, United States v. Whiting Pools, Inc.*, 462 U.S. 198, 211-12 (1983) (secured creditor "under § 363(e), remains entitled to adequate protection for its interests"). The means of adequately protecting a possessory lienholder may be tricky, but that does not mean that adequate protection does not need to be given. *See City of Chicago v. Kennedy*, 2018 WL 2087453 (N.D. Ill. May 4, 2018), at *4.

Adequate protection requires that the possessory lien be replaced with something of the indubitable equivalence (*i.e.*, something which does not put the City in a worse position). The Debtor in this case did not offer anything of the sort. He did not try to meet the requirements of the Bankruptcy Code under § 542(a) to strip off that interest (*i.e.*, providing adequate protection). And this is the result that *Fulton* held federal law provides for under § 362(a). Thus, in any case where adequate protection would be required there will be an erroneous deprivation. Thus, under this version of the law, erroneous deprivation is the rule, not the exception.

There is, therefore, significant value in requiring a predeprivation hearing. In fact, in other circuits the law is different and a debtor has to bring suit against the creditor under § 542(a) to obtain a turnover order. *See In re Cowen*, 849 F.3d 943,

951 (10th Cir. 2017); *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1474 (D.C. Cir. 1991). Before the turnover order is granted, the creditor may present defenses, such as lack of adequate protection or that the property has no value or benefit to the estate. This fixes the problem presented by this case, and the thousands of others, where the debtor doesn't even attempt to satisfy the requirements for turnover under § 542(a) before demanding turnover. And the fact that other circuits require a predeprivation hearing and process—as did this circuit, for over thirty years of practice under the Code, until *Thompson*—shows that it is completely feasible. Requiring a predeprivation hearing would remedy the substantial fraud that has occurred in using the bankruptcy courts to obtain vehicles without any intent to prosecute a bankruptcy case.

The process in this circuit does facially allow for a postdeprivation hearing, by granting the creditor the ability to seek to modify the stay on an emergency basis, but in reality that is not much of an option at all. For the creditor to take advantage of such a hearing it has to choose between two untenable options. First, the creditor could hold on to the property until a hearing can be held on the motion to modify the stay. However, taking that option means knowingly violating the law for every second before the hearing is held. And if the creditor loses, then it is not just a matter of losing the determination as to whether the deprivation was correct, but opens the creditor up to stay violation damages. It can hardly be said that a postdeprivation hearing is provided when one has to break the law to take advantage of it. *See* Ralph Brubaker, "Turnover, Adequate Protection and the Automatic Stay (Part II): Who Is 'Exercising Control' Over What?" 33 No. 9 Bankruptcy Law Letter NL 1 (2013), at 5 ("any such emergency hearing 'would come only after a period during which the creditor is in contempt.'").

The other option is to surrender the property and then seek adequate protection. But at that point the property is gone (sometime never to be found again) and if one

has a possessory lien, like the City does here, that lien and perfection of that lien may also be gone. The *Fulton* court may have opined that this would not be a big deal, but where the debtor simply does not prosecute the case, which happens all too often, or will not comply with an adequate protection order, the vehicle is gone and nothing can be done about it.[2]

Ultimately, the federal government here could very easily and feasibly provide a predeprivation hearing, which is what other circuit have held the text of the Bankruptcy Code already requires, and the fact that there may be a postdeprivation remedy, which there really isn't, does not matter. *See Zinermon*, 494 U.S. at 132 (1990) ("In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking."). As the Supreme Court aptly observed with respect to denying a predeprivation hearing: "This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone." *Fuentes*, 407 U.S. at 81–82.

## 2.3.   The interests of the debtor and the government in immediately stripping the creditor of its property interest without process are minimal.

The third consideration is the debtor's interest in the deprivation as well as those of the federal government in providing automatic *ex parte* deprivations immediately upon the mere filing of a piece of paper with the bankruptcy clerk. Under this factor, there must be an "***exigent circumstance*** permitting postponing any notice or hearing until after the [deprivation] is effected." *Doehr*, 501 U.S. at 16 (emphasis added). General statements of the benefit will not suffice.

---

[2] It must also be noted that this procedure imposes the burden on the creditor or possessory lienholder to initiate the postdeprivation proceeding, and the filing of a motion to modify the stay costs it $181. Thus, the creditor has to pay to have its rights restored even though they should have never been taken in the first place.

There is an argument that many debtors depend on their vehicles to get to and from places. And if the City, another secured creditor, or even a mechanic that worked on the vehicle but has not been paid, is allowed to maintain possession of that vehicle—even to maintain its valid lien—the debtor's ability to get around will be impaired. But that is a far cry from exigent circumstance sufficient to deny those parties any process before the deprivation of their possessory interest occurs. Nearly every American could make that claim of need for a vehicle, and that cannot be the standard for depriving due process.

The procedure to obtain turnover in other circuits provides for the debtor to initiate an action against the creditor and the creditor to defend itself. If the debtor would like to speed up this process he may certain initiate a § 542 action as soon as the petition is filed and seek a preliminary injunction for turnover.

The need of the government here is also minimal. As a rule, the need of the government cannot be greater than that of the debtors. *See Doehr*, 501 U.S. at 16. And any additional burden on the government in providing a predeprivation hearing would be negligible because under *Fulton* it already provides the option for a post-deprivation hearing, although not a realistic one. *See id*. Shifting the hearing from after the deprivation to before the deprivation is not a burden. *See id*.

Certainly debtors want their vehicles back as soon as possible, but that general benefit does not create an extraordinary case or constitute the exigent circumstances required to deny the creditors and possessory lien holders of process before their interests are deprived. Section 362(a) as applied here is unconstitutional and therefore void. The City cannot be sanctioned for failing to comply with an unconstitutional statute.

## 3. Section 106(a)(3) Codifies the Common Law that Municipalities are immune from punitive damages.

The Debtor also seeks punitive damages, but those are not available against a

governmental unit, which the City unquestionably is. *See* 11 U.S.C. § 101(27). Section 106(a)(3) expressly provides that an award of punitive damages my not be granted against a "governmental units." *See* 11 U.S.C. § 106(a)(6). This section is simply the codification of that common law. While municipal corporations, like private corporations, may sue and be sued like a natural person, the premise that a "municipal corporation [is immune] from punitive damages at common law [is] not open to serious question." *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 259-61 (1981). Therefore, the "general rule today is that no punitive damages are allowed [against a municipality] unless expressly authorized by statute." *Id.* at n.21. And, Congress would have "specifically so provided had it wished to abolish the doctrine." *Id.* at 263. *See also, Landon v. Oswego Unit Sch. Dist. No.* 308, 143 F. Supp. 2d 1011, 1012 (N.D. Ill. 2001) ("given this well established common law principle that a municipality was immune from punitive damages, Congress would have specifically so provided had it wished to abolish the doctrine."); *Holly v. City of Naperville*, 571 F. Supp. 668, 673 (N.D. Ill. 1983) (specific language need to so show Congress "intended to override the immunity from punitive damages which municipalities had enjoyed at common law."); *Senne v. Vill. of Palatine*, 2013 WL 68703, at *2 (N.D. Ill. Jan. 4, 2013) ("Consistent with the Supreme Court's analysis, punitive damages are unavailable against the Village under the DPPA unless the statute expressly abrogates the municipality's immunity.").

The fact that § 362(k) authorizes punitive damages generally as part of the relief given to a debtor for a violation of the stay cannot be taken to authorize punitive damages against a municipality like the City. As the district court held in *Senne*, "[t]hough the [statute] expressly references punitive damages, it is silent regarding whether a municipality may be held liable for them. Such language cannot be considered express legislative authorization or a waiver of the well-settled common law principle of municipal immunity from punitive damages." 2013 WL 68703, at *3. In-

16

stead, to abrogate this immunity, the statute must speak directly to the question as to whether punitive damages are available *against a municipality*, not just generally. *See United States v. Texas,* 507 U.S. 529, 534 (1993). The Code does not expressly provide that punitive damages may be awarded against a governmental unit, such as the City. Therefore, even if § 106(a)(3) was deleted from the Code, the City would still be immune from punitive damages. But in this instance, the Code tracks the common law.

The courts agree that the language of § 106(a)(3) is clear and unequivocally bars punitive damages against a governmental unit for a stay violation. *See In re Flynn,* 185 B.R. 89, 93 (S.D. Ga. 1995); *In re Griffin,* 415 B.R. 64, 71 (Bankr. N.D.N.Y. 2009); *In re Davis,* 201 B.R. 835, 837-38 (Bankr. S.D. Ala. 1996); *In re Duby,* 451 B.R. 664, 678 (B.A.P. 1st Cir. 2011). This prohibition extends to counties, *see Rosas v. Monroe Cty. Tax Claim Bureau,* 323 B.R. 893, 902 (Bankr. M.D. Pa. 2004), and even cities that mistakenly enforce parking and traffic laws in violations of the stay, *see In re Odom,* 571 B.R. 687, 698 (Bankr. E.D. Pa. 2017); *In re Quiles Aviles,* 532 B.R. 428, 440 (Bankr. D.P.R. 2015). The commentators also agree:

> This limitation on recovery is similar to the limitation on the waiver of the federal government's sovereign immunity in the Federal Tort Claims Act and ***is consistent with traditional rules prohibiting the recovery of punitive damages from municipalities*** that are otherwise subject to suit. As the Supreme Court has explained with respect to municipalities, but with reasoning which is equally applicable to other governmental units, "an award of punitive damages … 'punishes' only the taxpayers, who took no part in the commission of the tort … [and is] in effect a windfall to a fully compensated plaintiff… . Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers."

S. Elizabeth Gibson, *Congressional Response to Hoffman and Nordic Village: Amended Section 106 and Sovereign Immunity*, 69 Am. Bankr. L.J. 311, 331-32 (1995) (emphasis added). Therefore, punitive damages are not available. It is also

worth noting that punitive damages follow only from egregious conduct, which certainly did not occur here. Punitive damage should be denied on that ground too.

### 4. The Debtor has not plead an injury and any attorney's fees are limited to $125 an hour if they can be shown.

The Debtor also asks for damages, including punitive damages and attorney's fees because he "has been significantly inconvenienced." Motion, ¶ 19 [Dkt. No. 48]. But the automatic stay "is financial in character; it is not protection of peace of mind." *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 879 (7th Cir. 2001). It, therefore, only provides redress if the Debtor can prove a financial injury, not just inconvenience. *Id.* The Debtor has not pleaded any financial injury at all. Therefore, the motion should be denied.

The Debtor also seeks attorney's fees of $7,500, without any support for the number. Section 106(a)(3) again comes into play here. Under that sections attorneys' fees against a governmental unit are limited to that set by 28 U.S.C. § 2412(d)(2)(A), which provides such fees "shall not be awarded in excess of $125 per hour" except in unusual circumstances. For the court to award $7,500 the attorney would have to show he has worked 60 hours on this matter (60 x $120). But he has not even shown any time.

### 5. Any damages must be offset against the City's claim.

Finally, § 106(c) provides that any award of damages against a governmental unit must be offset against that entities' claim against the estate. *See* 11 U.S.C. § 106(c). And the language of § 106(c) is clear and unambiguous. As the Eighth Circuit explained:

> Section 106[c] states that any claim against a governmental unit that is property of the estate "*shall be offset*" against an allowed claim or interest of the governmental unit. This ***mandatory language*** comports with the established principle that an award to a plaintiff on a claim is

18

> ordinarily offset against an award to the defendant on a counterclaim;
> a single judgment is entered for the excess, if any. Thus, the tax claim
> established by the IRS must initially be offset by the counterclaim of
> the estate. A contrary rule would not only violate the language of §
> 106(b), but would contravene general principles of equity by requiring
> the governmental unit to pay the award to the debtor while being
> forced to attempt to recover its own claim through bankruptcy.

*United States v. McPeck,* 910 F.2d 509, 512 (8th Cir. 1990) (emphasis added). There-fore, the Eighth Circuit held that an affirmative monetary award for stay violations may only be imposed against a governmental unit after the government's total claim has been exhausted. *See id.* This reading also comports with the normal can-ons of statutory construction: "when the word *shall* can reasonably be read as man-datory, it ought to be so read." A. Scalia & B. Garner, Reading Law: The Interpreta-tion of Legal Texts, 114 (2012). The City is owed $3,660.50. That amount must be setoff before any affirmative money judgment may be entered against it.

# CONCLUSION

For all the reasons stated above, the City respectfully requests that this Court deny the Debtor's motion for damages in full.

Respectfully submitted,

Mark Flessner
Corporation Counsel

By: s/ David Paul Holtkamp
David Paul Holtkamp
Asst. Corp. Counsel Supervisor
**CITY OF CHICAGO,**
**DEPARTMENT OF LAW**
Chicago City Hall
121 N LaSalle St., Ste. 400
Chicago, IL 60602
312.744.6967
David.Holtkamp2@cityofchicago.org

## CERTIFICATE OF SERVICE

I, David Paul Holtkamp, an attorney, hereby certify that on July 15, 2019, I caused a copy of the attached Response to be served via the court's electronic noticing system for Registrants on those designated to receive such service as provided on the attached Service List.


/s/ David Paul Holtkamp


## SERVICE LIST

**Registrants**
(Via CM/ECF)

Richard G. Fonfrias on behalf of Debtor 1 Anthony Payne
flgbkcourtmail@gmail.com, rfonfrias2025@gmail.com;cn2gand@gmail.com,rfonfriasecfcourt@gmail.com,jennifer@mycasesupport.com,bamse.lex@gmail.com,pd-law-EGMvpYCskq@mycasemail.com,heath@casedriver.com,blake@casedriver.com
David Paul Holtkamp on behalf of Creditor City of Chicago, an Illinois Municipal Corporation
David.Holtkamp2@cityofchicago.org, Chuck.King@cityofchicago.org
Cari A Kauffman on behalf of Creditor AMERICREDIT FINANCIAL SERVICES, INC. d/b/a GM Financial
ckauffman@sormanfrankel.com, dfrankel@sormanfrankel.com
Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov
Tom Vaughn
ecf@tvch13.net, ecfchi@gmail.com