**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: ) | CASE NO. 19-BK-10450 |
| ) | CHAPTER 13 |
| **Anthony Payne,** ) | |
| ) | HON. DONALD R. CASSLING |
| Debtor. ) | |
| ) | |
| ) | |
| _____) | |

**UNITED STATES' MEMORANDUM OF LAW REGARDING THE**
**CONSTITUTIONALITY OF 11 U.S.C. § 362(A)(3) AS APPLIED**
**BY THE SEVENTH CIRCUIT**

The United States of America ("United States"), as intervenor in this bankruptcy case, hereby files this brief to defend the constitutionality of 11 U.S.C. § 362(a)(3) of the Bankruptcy Code, as applied by the Seventh Circuit in *Thompson v. General Motors Acceptance Corp.*, 566 F.3d 699 (7th Cir. 2009), and *In re Fulton*, 926 F.3d 916 (7th Cir. 2019).

**INTRODUCTION**

The City of Chicago ("the City") asserts a possessory lien on a vehicle it impounded before the Debtor's bankruptcy. The City argues that 11 U.S.C. § 362(a)(3), as applied in the Seventh Circuit, violates the City's Fifth Amendment Due Process rights because it requires the City to turn over the vehicle, thereby depriving the City of a property interest (its possessory lien) without a pre-deprivation hearing. As the United States discusses below, the City is not deprived of a constitutionally protected property right. It does not lose its possessory lien when it involuntarily

surrenders the vehicle, and it does not lose perfection of its lien. Furthermore, even if the City is deprived of possession of a vehicle, the City has not been denied due process.

The process provided to the City under the Bankruptcy Code after its surrender of a vehicle satisfies the Fifth Amendment in light of the interest at stake. The City's interest in possession of a vehicle is not significant because it merely serves as a mechanism for the City to collect fines and is not necessary to enforce police powers. In light of the nature of the City's true interest here -- debt collection -- the Bankruptcy Code provides appropriate procedural mechanisms to specifically protect that interest, because it affords the City with the opportunity to seek adequate protection for any diminution in the vehicle's value that would affect the City's ability to collect on its claim, while allowing the debtor to enjoy its property interest, which is the continued use of its vehicle to get to work and to earn an income. And if no adequate protection is available, the Bankruptcy Code provides a procedure for the City to obtain relief from the automatic stay to repossess the vehicle. Accordingly, the Bankruptcy Code's procedural protections of the City's secured status are sufficient to satisfy the Fifth Amendment.

## BACKGROUND

1. The Seventh Circuit Decisions

In *Thompson*, a creditor seized a debtor's car after he defaulted on payments. The debtor thereafter filed a petition under chapter 13 of the Bankruptcy Code and attempted to retrieve his car, but the creditor refused. The Seventh Circuit held that the creditor's refusal to return the car violated 11 U.S.C. § 362(a)(3), which prohibits a creditor from taking "any act . . . to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). *Thompson*, 566 F.3d at 703.

The Seventh Circuit rejected the creditor's argument that it may retain possession of the car until "it subjectively feels that adequate protection is in place" or until the debtor commences

an action for turnover under 11 U.S.C. § 542(a), and held that upon request of a debtor, a creditor must return property of the estate and then seek adequate protection of its interest, if needed. *Id.* at 707-08.

On June 19, 2019, the Seventh Circuit relying on *Thompson* affirmed four bankruptcy court decisions appealed by the City regarding applicability of the automatic stay to the City's possession of debtors' vehicles. *In re Fulton*, 926 F.3d 916. The Seventh Circuit held that the City's refusal to release debtors' impounded vehicles violated section 362(a)(3), and that the City's actions were not excepted from the automatic stay under 11 U.S.C. §§ 362(b)(3) or (b)(4).

2. <u>Factual Background</u>

On April 10, 2019, Anthony Payne ("Payne" or "Debtor") filed a chapter 13 bankruptcy case. Before the bankruptcy, the City impounded the Debtor's vehicle due to his unpaid parking tickets. The City filed a secured proof of claim in the case and asserted that it had a possessory lien on the Debtor's vehicle. The Debtor scheduled the claim as secured, and its chapter 13 amended plan provides for the claim to be paid over time. [ECF Nos. 36, 53]. On June 20, 2019, after the Seventh Circuit issued its decision in *Fulton*, the City released the Debtor's vehicle and filed a motion for adequate protection [ECF No. 45]. The Court granted the City's motion on June 24, 2019. [ECF No. 47]. Thereafter, the Debtor moved for damages and asserted that the City's refusal to release the vehicle after the bankruptcy filing, despite demands to do so, violated the automatic stay. [ECF No. 48].

The City filed a response to the Debtor's motion for damages ("City's Response") arguing that if section 362(a)(3) requires it to turn over the vehicle without a pre-deprivation hearing, section 362(a)(3) violates the City's procedural due process rights under the Fifth Amendment. [ECF No. 55]. According to the City, it has a constitutionally protected property interest in its

possessory lien, and the Seventh Circuit's interpretation of section 362(a)(3), which requires the City to turn over the vehicle without first affording the City with a hearing, deprives it of its property without due process of law. The City maintains that, in addition to the adequate protection granted by the Court, it is entitled to additional procedural protections such as a requirement for the Debtor to file an adversary proceeding seeking turnover under 11 U.S.C. § 542(a) (and establishing that the City's interest is adequately protected under section 361). City's Response at 7-15.

On July 15, 2019, the City filed a Notice of Constitutional Challenge challenging the constitutionality of section 362(a)(3) under the Due Process Clause of the Fifth Amendment. [ECF No. 57]. On July 16, 2019, the Bankruptcy Court certified the constitutional question. [ECF No. 58].

## **ARGUMENT**

The United States seeks to intervene on the issue of whether 11 U.S.C. § 362(a)(3), as applied by the Seventh Circuit in *Thompson* and *Fulton,* violates the City's Due Process Rights under the Fifth Amendment. This is the sole issue the United States will be addressing in its brief. The United States is not taking a position on whether: (1) the City willfully violated the automatic stay; (2) the Debtor is entitled to damages; or (3) *Thompson* and *Fulton* were correctly decided.

The City argues that the Seventh Circuit's application of section 362(a)(3) violates the City's rights under the Fifth Amendment, which provides that no person shall be deprived of property without due process of law. U.S. Const. amend. V. To establish a procedural due process claim, the City must show that it has a protected property interest and that it was deprived of that interest without due process. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428 (1982). Due process is flexible and varies with the particular situation. *Morrissey v. Brewer*, 408 U.S.

4

471, 481 (1972). "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." C*afeteria & Restaurant Workers Union, Local 473, AFL- CIO v. McElroy*, 367 U.S. 886, 895 (1961). Indeed, its "exact boundaries are undefinable, and its content varies according to specific factual contexts." *Hannah v. Larche*, 363 U.S. 420, 442 (1960). As demonstrated below, the City's due process argument fails because it has not been deprived of a constitutionally protected property right, and even if it were, the Bankruptcy Code contains sufficient procedural safeguards to protect the City's interest as a secured creditor.[1]

> I. The Bankruptcy Code Does Not Deprive the City
> Of a Constitutionally Protected Property Right

The City asserts that it has a possessory lien "of which possession is the essence" and that once it surrenders possession of the vehicle, it loses its lien and perfection of that lien. City's Response at 9, 13-14. Even if the City's possessory lien is a constitutionally protected property right, the Bankruptcy Code as applied in this case does not deprive the City of its lien.

> A. The City Does not Lose Its Lien when it Involuntarily Surrenders the Vehicle

The City does not lose its possessory lien on a vehicle when it releases it involuntarily. *Fulton*, 926 F.3d at 928-29. In the Seventh Circuit, binding precedent holds that the automatic stay "*compels* the City to return the vehicles," which means that its surrender of them is involuntary. *Fulton*, 926 F.3d at 929 n.3. Because "the City's possessory lien is not destroyed by its involuntary loss of possession due to forced compliance with the Bankruptcy Code's automatic stay . . . its possessory lien survives its loss of possession to the bankruptcy estate." *Id.* at 928.

---

[1] Solely for purposes of this case, the United States will assume that the City is a person within the meaning of the Due Process Clause of the Fifth Amendment.

5

B. The City Does Not Lose Perfection of Lien
   When it Involuntarily Surrenders the Vehicle

The City also does not lose perfection of the lien when it involuntarily surrenders the vehicle during the bankruptcy case. As a general rule, "[c]laims and their respective priority are determined as of the petition date." *In re Cumberland Molded Prods., LLC*, 431 B.R. 718, 722 (B.A.P. 6th Cir. 2010); *see also* 11 U.S.C. §§§ 502 (b), 506, 507.

The City had a secured claim on the petition date to the extent that it had a valid pre-petition lien. 11 U.S.C. § 506. In fact, the City filed a secured proof of claim and asserted that it had a possessory lien on the Debtor's vehicle. "[V]alid liens existing at the time of the commencement of a bankruptcy proceeding are preserved . . . ." *Isaacs v. Hobbs Tie & Timber Co.*, 282 U.S. 734, 738 (1931); *In re Chaseley's Foods, Inc.*, 726 F.2d 303, 308 (7th Cir. 1983) (same). In other words, a valid lien passes through bankruptcy unaffected. *See Palomar v. First American Bank*, 722 F.3d 992, 993 (7th Cir. 2013).

Moreover, section 1325(a)(5) of the Bankruptcy Code governs the rights of secured creditors in chapter 13 and specifically requires a chapter 13 plan to preserve a secured creditor's lien throughout the bankruptcy case and even when the case is later dismissed or converted without completion of the plan. 11 U.S.C. §1325(a)(5). As the Seventh Circuit stated in *Fulton*, the "[c]hapter 13 plan, itself, provides a public record of secured liens." *Fulton,* 926 F.3d at 928.

The City's involuntary surrender of the vehicle does not affect the priority of its lien over other secured claims. *Fulton,* 926 F.3d at 928-29; *In re Borden*, 361 B.R. 489, 494-98 (B.A.P. 8th Cir. 2007) (creditor with lien on petition date did not lose its lien or priority upon involuntarily losing possession of collateral).

The Seventh Circuit in *Fulton* unequivocally held that the involuntary loss of possession of a debtor's vehicle does not affect perfection of the City's lien. "[P]ossession is not the only

6

way to perfect; the City can also perfect its lien by filing notice of its interest in the vehicle, such as with the Secretary of State or the Recorder of Deeds . . . Thus, the City does not need to retain possession of the vehicle to maintain perfection of its lien." *Fulton,* 926 F.2d at 928 (holding that City's retention of possession was not excepted from the stay under section 362(b)(3)).

In sum, if the City involuntarily surrenders a vehicle, it loses neither its lien nor perfection. Because the City is not deprived of a protected property interest, its due process argument fails.

### II. The Bankruptcy Code affords the City Sufficient Due Process to Satisfy the Fifth Amendment

Even if the City were deprived of a protected property interest, the City has been afforded due process for Fifth Amendment purposes.[2] What process is due depends on "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976); *accord Brown v. Brienen*, 722 F.2d 360, 365 (7th Cir. 1983) (under *Matthews*, "[t]here is no rule that a 'pre-deprivation' hearing is required in every case," and that a post-deprivation hearing can satisfy due process). As discussed below, numerous procedural safeguards in the Bankruptcy Code afford the City due process.

---

[2] The only interest the City could argue was lost is its possession of the vehicle. The Bankruptcy Code, however, provides the City with various rights, including adequate protection rights, and its opportunities to enforce those rights provide due process because they "replace the protection afforded by possession." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 207 (1983). *See also* discussion *infra* Section II(B).

7

A.  The Private Interest Affected

Under the *Matthews* test, the first factor is the importance of the interest at stake.  The City asserts that the private interest affected here is significant because its lien relies on possession for its existence.  City's Response at 9.  In addition, the City contends that its property interest in the vehicle is significant because it is rooted in law enforcement and the City's ability to enforce its traffic laws.  *Id.* at 11-12.  The Seventh Circuit in *Fulton* rejected both contentions.

First, the City's possession of the vehicle is not critical to continuation of its lien.  *Fulton*, 926 F.3d at 928.  Second, the City's actions were an "exercise of revenue collection more so than police power . . . As the ordinance . . . demonstrates, the City's focus is on the financial liability of vehicle owners, not on public safety."  *Id.* at 930 (holding that the City's possession of the vehicle was not excepted from the stay as an enforcement of police powers).  Thus, contrary to its own assertions, the City has no significant property interest at stake because its lien is preserved, and the nature of its interest is rooted in debt collection, not law enforcement.

As the Seventh Circuit stated, "[a]t bottom, the City wants to maintain possession of the vehicles not because it wants the vehicles but to put pressure on the debtors to pay their tickets." *Fulton,* 926 F.3d at 925-26.  In impounding the vehicles, the City "imposes the monetary penalty on the owner of the vehicle, not the driver, which signals a seeming disconnect if the City actually has safety concerns about the offending driver . . . [t]he continued possession of the vehicles is the City's attempt to short-circuit the state court collection process and to enforce final judgments requiring monetary payment from the debtors . . . the City needs to satisfy the debts owed to it through the bankruptcy process, as do all other creditors." *Fulton*, 926 F.3d at 930-31.  Thus, the City's interest in maintaining possession of the vehicle is not a significant property interest because it serves merely as a mechanism for the City to collect fines rather than protect public safety.

8

Accordingly, the City's interests are not sufficiently weighty to require additional procedural protections.

### B. Risk of Erroneous Deprivation

Even if the City has a significant property interest here, the other elements of the *Matthews* test must be considered. The second element of the *Matthews* test is the risk that the deprivation was erroneous because a particular safeguard was not provided. "The benefit of the safeguard can be thought of as the product of multiplying the value of the property interest by the probability that that value will be destroyed by a government error if the safeguard is not provided." *Sutton v. City of Milwaukee*, 672 F.2d 644, 645 (7th Cir. 1982).

Turnover of a seized asset is compulsory under section 542(a), which provides that an entity in possession of property that the trustee "may use sell, or lease under section 363 . . . shall deliver to the trustee, and account for, such property . . . unless such property is of inconsequential value or benefit to the estate. " 11 U.S.C. § 542(a); *see Thompson*, 566 F.3d at 704.  And, under *Thompson* and *Fulton*, a creditor violates section 362(a)(3) when it retains possession of a vehicle subject to a possessory lien after a debtor files bankruptcy and demands its return.

The Bankruptcy Code, however, provides a secured creditor with several procedural protections if it is forced to turn collateral over to the bankruptcy estate under sections 542(a) and 362(a)(3). Primarily, a secured creditor may at any time request adequate protection to the extent it can establish that its collateral, and thus the value of its secured claim, is diminishing in the hands of the debtor. *See* 11 U.S.C. §§ 363(e), 361 (describing types of adequate protection); *In re Big3D, Inc.*, 438 B.R. 214, 220-221 (B.A.P. 9th Cir. 2010) (adequate protection is intended "to compensate a secured creditor whose collateral declines in value while it is in the possession of, and being used by, a  . . . debtor.").

The City argues that it was denied due process because it should have been afforded a pre-deprivation hearing in the form of a debtor-initiated adversary proceeding for turnover under section 542(a). The City's argument that sections 542(a) and 362(a)(3) create a risk of erroneous deprivation rests on a misconception of the City's adequate protection rights.

The City, as secured creditor, has protections afforded by the Bankruptcy Code and an affirmative duty to protect its claim. *In re* Szostek, 886 F.2d 1405, 1414 (3rd Cir. 1989) ("creditors are obligated to take an active role in protecting their claims."); *In re Barton Indus., Inc.,* 104 F.3d 1241, 1246 (10th Cir. 1997) (same); *In re Pardee*, 193 F.3d 1083, 1086 (9th Cir. 1999) (same). The Bankruptcy Code explicitly puts the burden on the creditor -- and not the debtor as the City contends -- to seek adequate protection if its collateral is diminishing in value. *See* 11 U.S.C. § 363(e); *United States v. Whiting* Pools, 462 U.S. at 204 ("At the secured creditor's insistence, the bankruptcy court must place such limits or conditions on the trustee's power to sell, use, or lease property as are necessary to protect the creditor. The creditor with a secured interest in property included in the estate must look to this provision for protection, rather than to the nonbankruptcy remedy of possession."). "[T]he Code is clear that it is the creditor's obligation to come to court and ask for protection, not, as the City advocates, the debtor's obligation to file an adversary proceeding against every creditor holding her property at the time she files for bankruptcy." *Fulton,* 926 F.3d at 926.

In addition to moving for adequate protection, as the City did here, it could protect its lien rights by moving under section 362(d)(1) to lift the automatic stay for cause, including lack of adequate protection, and can seek such relief on an emergency basis, and even ex parte, if it will suffer irreparable harm. 11 U.S.C. § 362(f) (court may relieve creditor from the stay "as is necessary to prevent irreparable damage to the interest of an entity in property"); Fed. R. Bankr.

P. 4001(a)(2). Moreover, where adequate protection is due, if a debtor cannot or does not furnish it, then the debtor will have to give up the collateral. *See In re Briggs Transp. Co.*, 47 B.R. 6, 8 (Bankr. D. Minn. 1984) (once the creditor demands adequate protection, "the onus [is] on the debtor to decide whether or not to voluntarily give up the collateral or attempt to make the adequate protection payments in order to keep the collateral.").

Sections 361, 362(d) and (f), 363, and Fed. R. Bankr. P. 4001(a)(2) of the Bankruptcy Code also protect a secured creditor in chapter 13 cases, and ensure that the City is afforded due process. *See* 11 U.S.C. § 103. "[I]t is obvious that a proper due process inquiry cannot be made by focusing upon one narrow provision of the challenged statutory scheme . . . Courts must examine *all* procedural protections offered by the State, and must assess the *cumulative* effect of such safeguards." *Santosky v. Kramer*, 455 U.S. 745, 775 (1982) (emphasis in original). "[C]ourts must consider 'the fairness and reliability of the existing . . . procedures' before holding that the Constitution requires more." *Santosky*, 455 U.S. at 775 (quoting *Matthews v. Eldridge*, 424 U.S. at 343). By focusing solely on section 362(a)(3), the City ignores these other provisions of the Bankruptcy Code.

The "Bankruptcy Code and Rules provide adequate substantive and procedural means for the City to protect its interest." *In re Michael E. Brown*, No. 19-90436, slip. op. at 3 (Bankr. C.D. Ill. July 25, 2019) (rejecting the City's due process argument and holding that the City's lien may be protected through filing an adequate protection motion). As the Seventh Circuit found in *Fulton*, the true nature of the City's interest in the vehicle is debt collection and the ability to collect on its claim. And the Bankruptcy Code is narrowly tailored to protect the City's interest in debt collection with the right to seek adequate protection against a decline in the value of the

11

Case 19-10450 Doc 79 Filed 09/23/19 Entered 09/23/19 13:07:22 Desc Main
Document Page 12 of 15

vehicle, while allowing the debtor to enjoy its property interest in continued use of the vehicle to go to work, earn an income and pay creditors.

The Seventh Circuit in *Fulton* acknowledged the procedural safeguards protecting the City's interests. As the Court stated, "once the City complies with the automatic stay and immediately turns over vehicles . . . the City may immediately file an emergency motion for adequate protection of its interest in a debtor's vehicle, which may be heard within a day or so, and the City can even file such motions ex parte if necessary . . . It will be the rare occasion where a single day's delay will have lost the City the value of its security." *Fulton*, 926 F.3d at 926. [3]

Indeed, after the Seventh Circuit issued the *Fulton* decision, the City released the vehicle and, simultaneously filed an emergency motion for adequate protection. The Court granted the City's motion within two business days, conditioning the Debtor's continued possession of the vehicle on his maintenance of insurance listing the City as a loss payee. [4] [ECF No. 47]. The City does not argue in its brief that the adequate protection granted by the Court insufficiently protects its ability to collect its claim. [5]

---

[3] The City states that it costs money to file motions. City's Response at 14 n.2. While filing motions might impose an administrative burden on the City, that does not mean the City's due process rights have been violated. *See In re Bradford*, 14 B.R. 722, 726 (Bankr. N.D. Ill. 1981) (filing fee imposed on creditor for seeking stay relief does not deprive creditor of due process).

[4] The City argues that once it surrenders the vehicle, a debtor could fail to comply with an adequate protection order. City's Response at 14. If a debtor fails to comply with a court order, it can be held in contempt and face sanctions.

[5] In its response brief, the City asserts that its due process rights were violated and that the risk of erroneous deprivation is enormous because the Debtor could strip the City of its possessory lien rights and provide nothing in return. City's Response at 12. Not only does the City fail to mention that the Court granted its adequate protection motion, but it also ignores the fact that the Debtor scheduled the City as a secured creditor and the Debtor's chapter 13 plan provides for payments to the City on its secured claim. Moreover, pursuant to section 1325(a)(5), the plan provides for the City to retain its lien until payment of the underlying debt or until discharge, whichever occurs first.

Requiring the City to turn over a vehicle to a debtor/owner does not create a substantial risk that the City will lose the value of its collateral (the debtor's vehicle), which the debtor has at least as much incentive to preserve as the City has.[6]

A pre-deprivation turnover hearing would not meaningfully reduce the risk of erroneous deprivation. Instead, it would merely shift the burden from the City to establish that the value of its collateral is unduly diminishing in the debtor's hands to the debtor to first establish that the value of the City's lien is not diminishing, and then that the creditor's interest is adequately protected. Although this burden-shifting would clearly benefit the City, it does not seem to be necessary to avoid erroneous deprivation. As stated, a debtor has every incentive -- if not more -- to preserve the value of its own collateral, as the City does. "[D]ebtors . . . need their vehicles in order to get to work, earn money, and make payments on their [c]hapter 13 plans." *In re Cross*, 584 B.R. 833, 841 (Bankr. N.D. Ill. 2018). Thus, the risk of erroneous deprivation is not enormous, as the City contends.

The City also argues that once it surrenders the vehicle, it would be erroneously deprived of its possessory interest if the debtor destroys, transfers, or further encumbers the vehicle, or abandons the case. City's Response at 10. But there is no indication that a debtor will do these things. A debtor in bankruptcy cannot sell or encumber its property without notice and hearing. 11 U.S.C. §§ 363, 364. And, as the Seventh Circuit stated in *Fulton,* "if a debtor files a bankruptcy petition in bad faith and immediately dismisses her case, as the City claims many debtors do solely to retrieve their impounded vehicles, the City has recourse: it may file a bad faith motion against

---

[6] The City does not argue that there is a substantial risk that the turnover provision would erroneously deprive it of an interest in a vehicle because the vehicle was not property of the estate and, therefore, not subject to the turnover requirement of section 542(a).

13

the debtor." *Fulton*, 926 F.3d at 927. If the bankruptcy case is dismissed, the City could repossess the vehicle. *See* 11 U.S.C. § 362(c)(2)(B).

### C. The Public Interest

"In striking the appropriate due process balance the final factor to be assessed is the public interest." *Matthews,* 424 U.S. at 347. Here, the interests of the Debtor outweigh the City's interest in additional safeguards such as shifting the burden to the Debtor to establish a right to turnover. "[T]he purpose of reorganization [in] bankruptcy . . . is to allow the debtor to regain his financial foothold and repay his creditors . . . That is why a stay is imposed." *Thompson*, 566 F.3d at 706; *see In re Lisse*, 921 F.3d 629, 639 (7th Cir. 2019) ("basic premise of [chapter 13] is to facilitate the debtor's ability to pay his creditors. . . ."). This focus "also reflects the importance of vehicles to residents' everyday lives, particularly where residents need their vehicles to commute to work and earn an income in order to eventually pay off their fines and other debts." *Fulton,* 926 F.3d at 926. "If a debtor's car remains in the hands of a creditor, it could hamper the debtor from either attending or finding work, which is crucial for garnering the funds necessary to pay off his debts." *Thompson*, 566 F.3d at 707.

On the other hand, the City's interest in maintaining possession of the vehicle is merely an exercise in revenue collection. The City is not deprived of any protected property right, and even if it were, the Bankruptcy Code's procedural safeguards protect the City's interests as a secured creditor.

## **CONCLUSION**

For the foregoing reasons, section 362(a)(3) of the Bankruptcy Code, as applied by the Seventh Circuit, is not unconstitutional and does not violate the City's Fifth Amendment Due Process rights.

Dated:  September 23, 2019               Respectfully submitted,

                                      JOSEPH H. HUNT
                                      Assistant Attorney General

                                      JOHN R. LAUSCH, Jr.
                                      United States Attorney

                                      DAVID H. DeCELLES
                                      Assistant United States Attorney
                                      219 South Dearborn Street
                                      Chicago, Illinois 60604
                                      (312) 353-4220
                                      david.decelles@usdoj.gov

                                      /s/Andrea Horowitz Handel
                                      RUTH A. HARVEY
                                      MARGARET M. NEWELL
                                      ANDREA HOROWITZ HANDEL
                                      U. S. Department of Justice
                                      Civil Division, Commercial Litigation Branch
                                      P. O. Box 875, Ben Franklin Station
                                      Washington, D.C.  20044-0875
                                      T: (202) 307-0358
                                      F: (202) 514-9163
                                      andrea.handel@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2019, the United States' Memorandum of Law Regarding the Constitutionality of 11 U.S.C. § 362(a)(3) as Applied by the Seventh Circuit was electronically filed with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all registered CM/ECF participants.

                                                              /s/Andrea Horowitz Handel
                                                              Andrea Horowitz Handel